*525 OPINION OF THE COURT
Anthony Kane, J.
In this CPLR article 78 proceeding challenging a determination by the Industrial Board of Appeals (IBA) in which it affirmed a decision by the New York State Department of Labor (DOL) to deny access to petitioners to the complete and unredacted Occupational Injury Logs (Logs), petitioners Ronald Goldstein, Roger Benson and the Public Employees Federation, AFL-CIO seek a declaratory judgment that the DOL’s interpretation of the Public Employee Safety and Health (PESH) (Labor Law § 27-a) Act was arbitrary, capricious and contrary to law; an order requiring respondents to provide all of the subject Logs in their complete and unredacted form; an order adjudging and decreeing that the IBA’s denial of petitioners’ administrative appeal constituted an erroneous interpretation of the law and was contrary to the PESH Act; and an order requiring respondents to comply with requests for Occupational Injury Logs in the future consistent with the PESH Act.
Respondents the State of New York, the Industrial Board of Appeals and the New York State Department of Labor have filed a verified answer seeking to dismiss the petition.
Procedural History
On or about December 4, 1998, petitioner Ronald Goldstein (Goldstein), an employee of the New York State Department of Labor and a representative of all Department of Labor PEF members on a State-wide basis, submitted a request to Donna Abrams (Abrams) at the DOL’s Employee Relations Office for the most recent Department of Safety and Health (DOSH)[1] 900 Forms (Forms) for 17 DOL work sites within New York City pursuant to part 801 of the PESH Act (12 NYCRR), section 27-a (9) of the Labor Law.
In a February 11, 1999 memorandum, Ms. Abrams advised Mr. Goldstein that DOL would permit access to the requested records to appropriate PEF representatives at the sites where the records were kept from which the names of the injured or ill employees would be redacted. DOL agreed to release information concerning the occupations and units of the injured or *526 ill employees contained in the subject Forms if the confidentiality of each employee could foe ensured.
On March 25, 1999, petitioner Goldstein filed a formal PESH complaint pursuant to section 27-a (5) (a) of the Labor Law against the DOL on the grounds that DOL’s refusal to provide unredacted copies of the subject Forms, including the names of the injured and sick employees listed on the Forms, violated the PESH Act and the Occupational Safety and Health Act (29 USC § 651 et seq. [OSHA]). On or about September 8, 1999, petitioner Goldstein was served with a response to his complaint dated August 31,1999, in which the PESH Bureau found that the complaint was “not sustained.” As a result, pursuant to sections 27-a and 101 of the Labor Law, petitioners administratively appealed the PESH Bureau’s determination to the IBA. By resolution of decision dated December 20, 2000, the IBA denied the appeal finding that DOL’s statutory interpretation was not irrational.
Discussion
Contrary to petitioners’ assertions, the Court finds that the standard of review to be applied in assessing the propriety of respondent IBA’s determination is not whether there was substantial evidence in support thereof, but rather whether there is a rational basis for said determination. Accordingly, the Court denies petitioners’ request to have this matter transferred to the Appellate Division (see, CPLR 7803 [4]; 7804 [g]). In any event, as correctly noted by respondents, the issue of substantial evidence was not raised by petitioners until they submitted their Memorandum of Law in support of the petition.
In its appeal to the IBA, petitioners argued that, pursuant to 12 NYCRR 801.8 (b), petitioner Goldstein is entitled to review the entire logs and summaries of all recordable occupational injuries and illnesses in all 17 DOL offices in New York City. As respondents properly assert, petitioners did not appeal that portion of the PESH Bureau’s determination which held that DOL was only required to provide access to the log summaries at the sites where they were maintained. Thus, that portion of the petition seeking an order of this Court directing DOL to provide unredacted copies of the summaries and to comply with future requests for production of the logs is not properly before this Court. Accordingly, the Court concurs with respondents that the only appropriate challenge before this Court is to the IBA’s resolution of decision as it relates to “access” to *527 records pursuant to 12 NYCRR 801.8 since it is the ISA’s decision that constitutes the final agency determination. Succinctly stated then, the only issue before this Court is whether petitioners are entitled to examine unredacted log summaries at the sites where the logs are maintained.
Prefatorily, the Court notes that this is a case of first impression. As the basis of their application, petitioners argue that the mandatory access provisions of the PESH Act and Federal OSHA entitle petitioners to review the entire logs and summaries of all recordable occupational injuries and illnesses in all 17 DOL offices.
Petitioners argue that the PESH Act (Labor Law § 27-a), its implementing regulations (12 NYCRR part 801) and OSHA require an employer to provide full access for the examination of Occupational Injury Logs.
Section 27-a (4) (a) of the Labor Law provides, in relevant part, as follows:
“4. Safety and health standards, a. The commissioner shall by rule adopt all safety and health standards promulgated under the United States Occupational Safety and Health Act of 1970 (Public Law, 91-596) [footnote omitted] which are in effect on the effective date of this section, in order to provide reasonable and adequate protection to the lives, safety and health of public employees.” (Emphasis added.)
12 NYCRR 801.8, entitled “Access to records,” reads as follows:
“(a) Each employer shall provide, upon request, records provided for in sections 801.3, 801.5 and 801.6 of this Part for inspection and copying by any representative of the Commissioner of Labor.
“(b) The ‘Log and Summary of Occupational Injuries and Illnesses’ provided for in section 801.3 of this Part shall, upon request, be made available by the employer to any employee, former employee, and to their representatives, for examination and copying, in a reasonable manner and at reasonable times. The employee, former employee and their representatives shall have access to the log for any establishment in which the employee is or had been employed.
“(c) Access to the log provided under this section shall pertain to all logs retained under the require *528 ments of section 801.7 of this Part.”
Pursuant to 29 CFR 1956.10 (a), “[a] State plan for public employees must meet the specific criteria set forth in this section.” Section 1956.10 (i), entitled “Employer records and reports,” states: “[t]he plan shall provide assurances that public employers covered by the plan will maintain records and make reports on occupational injuries and illnesses in a manner similar to that required of private employers under the Act” (emphasis added).
Upon completion of its review of the DOL’s determination to deny petitioners access to unredacted copies of the subject DOSH 900 Forms, the IBA found, in part, that it is “undisputed that the DOSH 900 Forms are being maintained and compiled by the Respondent in a responsible manner” (IBA resolution of decision, at 3). The IBA further found that it is undisputed that the “state standards regarding the maintenance of the records and by extension, access thereto, must be done in a manner ‘similar’ to the federal standards. The question is whether the access provisions must be ‘identical’, as Petitioner urges or whether they are properly subject to the construction and interpretation of the enforcement agency, in this case, the Respondent” (id.).
In reaching its decision, the IBA stated:
“6. The Board finds that Respondent, as the enforcement agency herein, is entitled to reasonably interpret the controlling state regulations under which it acts, and of which it is charged with administration. We find that in situations such as this the Department of Labor must properly be given wide latitude and discretion in its construction of state regulations concerning their enforcement powers, and unless such discretion is shown to be unreasonable, arbitrary, or an abuse of discretion, that it should be given deference.
“a. It is undisputed that the DOSH-900 forms are being maintained and compiled by the Respondent in a responsible manner. The Board is not persuaded by Petitioner’s argument that the employee representatives need the un-redacted logs so that they can ensure the correctness of information or that the employer is properly keeping the logs. This is the duty of the enforcement agency and there is nothing in this record which suggests that this duty is not being carried out in an efficient and capable *529 manner.
“b. The Board further finds that confidentiality issues do arise in the disclosure of the names of the injured or sick employees, and that the Respondent has properly considered these issues in its interpretation and construction of the accessibility provisions of the controlling PESH provisions.”
Petitioners argue that the IBA decision constitutes a clearly erroneous interpretation of applicable law. According to petitioners, State law and regulations mandate full access to Occupational Injury Logs; the PESH Act and its regulations unequivocally mirror the federal mandate that employees have full access to these Logs. Without access to the complete Logs, including the names of all injured and sick employees, it would be difficult, contend petitioners, to “ascertain patterns of injuries, how they occurred, the possible reason for injuries and potentially, how to prevent the injuries form [sic] occurring again.”
The Court begins its analysis with the well-settled precept that an administrative agency’s interpretation of a statute for which it is responsible for administering is entitled to great weight (Matter of Howard v Wyman, 28 NY2d 434, 438 [1971]). However, an “agency may not under the guise of administering the statute ascribe a different or unreasonable meaning to its terms” (Matter of Evans v Newman, 100 Misc 2d 207, 209, affd 71 AD2d 240 [3d Dept 1979], affd 49 NY2d 904 [1980]). Where the question is whether the administrative agency made a correct legal interpretation, the task of the court is merely to see whether the determination was affected by an error of law or was arbitrary or capricious or an abuse of discretion (Matter of Benson v Cuevas, 272 AD2d 764, 766 [3d Dept 2000]; see also, Matter of Pell v Board of Educ., 34 NY2d 222, 231, 234-235 [1974]).
Applying the foregoing principles to the case at hand, the Court concludes that the IBA’s affirmance of the DOL’s decision to redact certain identifying information from the subject Logs lacked a rational basis and constituted an erroneous interpretation of the law. Unquestionably, an agency, such as the DOL, is given broad latitude in interpreting regulations for which it is responsible for administering. Nevertheless, such discretion is not unfettered. Accordingly, in affirming the DOL’s determination to unilaterally redact certain identifying information from the Logs in question, the IBA must find, based on the evidence before it, that such determination had a rational *530 basis and did not constitute an error of law. Such is not the case herein.
Unlike respondents, the Court finds insignificant the fact that petitioners presented no evidence in support of their contention that disclosure of the names of the ill or injured employees in the subject Forms was necessary so that the unions could ascertain patterns of injuries. There is nothing in the PESH Act which requires the production of such statistics as a condition precedent to gaining access to the Logs in question. Similarly, the position adopted by petitioners that access to the names and work units of injured employees also allows union officials to identify members who may provide input on the causes and potential prevention of work hazards is not particularly relevant to whether petitioners are entitled to access to the Logs under the controlling federal and State regulations.
The fact, however, that other State employers, such as the Department of Correctional Services and the Office of Mental Health, have provided petitioners with such information without redaction is significant in that it appears that State agencies which would have an equal, if not greater, concern for protecting the privacy of their employees have not interpreted the subject regulations in the same manner. Furthermore, it is clear by the correspondence exchanged between DOL and petitioners that it unilaterally decided, under the guise of confidentiality, to redact not only the names of the employees, but also the case or file number, the employee’s occupation and the employee’s unit.
To further bolster their position, respondents refer this Court to the minutes of the March 2, 1999 meeting of the Statewide Safety and Health Committee wherein Barbara Maloney, President of the Civil Service Employees Association (CSEA), expressed concern over the dissemination of personal confidential information with respect to CSEA employees. The Court, however, finds this of limited, if any, significance with respect to the determination rendered by the IBA.
Indeed, then, the issue, as concisely stated by respondents, is what access public employers must provide under State regulations. Here, petitioners argue that federal regulations require that employers such as DOL must provide access to the entire Occupational Injury Log and its summary for purposes of inspection and copying to any employee, former *531 employee, and to their representative (29 CFR 1904.7).[2] Petitioner thus concludes that since the State plan must be at least as effective as OSHA requirements, it is clear that the State as an employer must at least, at a minimum, provide access to the entire Occupational Injury Log for purposes of inspection and copying to any present or former employee and their representatives (29 CFR 1956.10 |c]; Labor Law § 27-a [4] [a]; 12 NYCKR 801.1).
Pursuant to 29 USC § 652 (5), an employer, for the purposes of OSHA, has been defined as one who is “a person engaged in a business affecting commerce who has employees, but does not include the United States * * * or any State or political subdivision of a State.” This does not mean, as respondents so strenuously argue, that public employers are expressly exempted from the regulations and thus OSHA’s private sector regulations have absolutely no bearing on the instant issue. The Court rejects respondents’ argument. Notably, as respondents concede, in order to qualify for federal funds, New York State was required to submit a plan for the development of occupational safety and health standards to the federal government. Specifically, Labor Law § 27-a (3) (c) provides as follows:
“The state shall promulgate a plan for the development and enforcement of occupational safety and health standards with respect to public employers and employees, in accordance with section eighteen (b) of the United States Occupational Safety and Health Act of 1970 (Public Law 91-596) which provides: ‘(b) Any State which, at any time, desires to assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated under section 6 shall submit a State plan for the development of such standards and their enforcement.’ ”
Labor Law § 27-a (4) compels the Commissioner of Labor to adopt, by rule, all safety and health standards promulgated under OSHA (29 CFR part 1910). Admittedly, by reference in the implementing regulations, New York State has adopted *532 the federal safety standards. Yet, argue respondents, as a matter of law, “record keeping” is not a substantive safety standard as contemplated by Labor Law § 27-a (4) (see, Matter of New York State Coalition of Pub. Empls. v New York State Dept. of Labor, 89 AD2d 283, 287 [3d Dept 1982], affd 60 NY2d 789 [1983] [“It is difficult to characterize record keeping as a practice, operation, process, etc., that fits within this definition of‘standard’; rather, record keeping is an ‘enforcement or detection procedure designed to further the goals of the (legislation)’ ”]). Thus, respondents adopt the position that since record keeping is not a standard under the OSHA regulations, the federal requirement regarding the creation and maintenance of the Log of Occupational Injuries and Illnesses by public employers in New York State is only indirectly imposed.
The Court finds respondents’ analysis flawed. 29 CFR 1956.10 (i), governing employer records and reports, provides that “The [State] plan shall provide assurances that public employers covered by the plan will maintain records and make reports on occupational injuries and illnesses in a manner similar to that required of private employers under [OSHA]” (emphasis provided). Accordingly, respondents argue that the federal government has conferred the ability to regulate the manner in which a State makes and maintains its records to the State, provided that such plan is similar to that provided by OSHA.
This is true. However, 29 CFR part 1956, subpart F specifically codifies federal rules for New York’s State Plan for public employers. 29 CFR 1956.50 (h), governing “Records and reports,” states that “[t]he plan provides that public employers in New York will maintain appropriate records and make timely reports on occupational injuries and illnesses in a manner substantially identical to that required for private sector employers under Federal OSHA” (emphasis provided).
Thus, while respondents are correct that federal regulations under OSHA do not specifically mandate that a public employer create and maintain the DOSH 900 Forms, a public employer with the State must maintain records on such occurrences in a substantially identical manner. In any event, it is undisputed that the DOSH 900 Form is the equivalent in form and substance to the forms required under OSHA regulations. Also unchallenged is the fact that the DOL maintains its records and makes its reports with respect to occupational illnesses and injuries in a manner similar to that of OSHA; certainly, there is no allegation that the DOL has not met its enforce *533 ment obligations. The State’s record-keeping provisions are found in 12 NYCRR part 801.
Respondents next argue that OSHA’s access to records provisions are entirely separate and distinct from the provisions with respect to maintenance of records which distinction is critical to the issue before the Court. Respondents contend that the federal record-keeping requirement of “similarity” applies only to the State’s provisions with respect to the maintenance of records and not to the access of same. Assuming arguendo that the similarity requirement did, in fact, apply to records access, respondents maintain that their interpretation of the access provisions are consistent with the OSHA’s requirement of similarity.
The Court finds, however, that such an interpretation is clearly irrational in light of the evidence. In this respect, the Court finds particularly revealing that both OSHA and the IBA have extended the similarity requirements to the regulations governing “access.” In correspondence exchanged between OSHA officials and the DOL, OSHA strongly objected to the challenged disclosure policy stating: “[a] policy of restricting employee access to the complete information required to be maintained on the OSHA log provides diminished protection to New York’s public employees relative to that provided to their private sector counterparts and clearly does not provide them access to safety and health information ‘in a similar manner’ to that in the private sector.” The gravamen of OSHA’s objection is that it would not have approved any State regulation permitting the redaction of the subject information because public employers are required to maintain records and make reports on occupational illnesses and injuries in a manner similar to that required of private employers under OSHA.
Neither this Court nor the DOL are bound by OSHA’s interpretation of the access provisions contained within the PESH Act. Nevertheless, the Court finds OSHA’s interpretation of its own regulations, given its special competence in this area, persuasive, particularly as the language contained therein is identical to that of the State’s regulations with respect to access to records.
Furthermore, although the IBA affirmed as rational the DOL’s determination to redact the subject information, it nevertheless found that access to the records in question must, by extension, be provided in a manner similar to the federal standards. As a result, the Court finds unavailing respondents’ argument that the distinction between the regulations govern *534 ing record keeping and access thereto critical in reaching a disposition of the instant matter.
Having determined the foregoing, the Court now turns to whether the PESH Act or OSHA permits respondents to unilaterally redact the requested information. After examining the controlling regulations, the Court concludes that it is irrational and an error of law for the DOL to withhold not only the names but also any other information contained on the DOSH 900 Logs. Significantly, neither the OSHA regulations nor the PESH Act speaks to the issue of maintaining confidentiality with respect to record keeping or access thereto. It has been established that there is no distinction between record keeping and access thereto and that the regulations promulgated by the State must be “substantially identical” to those governing private employers. Unquestionably, under 29 CFR 1904.7 (b) (1), private sector employers must provide access to the log and summary of all recordable occupational injuries and illnesses to an employee, former employee or his or her representative. Such regulation contains no limitation of access, nor does the State’s regulations as found in 12 NYCRR 801.1, other than reasonable-time-and-manner. Thus, at the very minimum, the State must provide access to the DOSH 900 Forms to employees, former employees and to their representatives, for inspection and copying.
If it had been the intent of the Legislature to confer upon State agencies, such as the DOL, the discretionary power to limit accessibility to the information contained in the DOSH Logs, then it appears the provision governing access would have been drafted accordingly. Absent any statutory language to the contrary, the Court concludes that the Legislature did not adopt the DOL’s view that agencies have the unilateral right to withhold any of the information contained in the subject Logs nor that access to same would constitute an invasion of privacy. As the State is required to permit access to the Logs in a manner substantially identical to that provided by OSHA, and the PESH Act itself reiterates that its regulations are to be adhered to consistent with part 1904 of OSHA (29 CFR), the DOL’s determination to provide less than full access to the Logs and summary is irrational and an erroneous interpretation of the law.
Although not dispositive of the issues presented herein, the Court nevertheless finds of some interest a Federal Court of Appeals case cited by respondents in a footnote in their opposing brief, Caterpillar Inc. v Herman (131 F3d 666 [7th Cir *535 1997]). The controversy therein arose out of a union request pursuant to 29 CFR 1904.7 (b) (1), requiring that the log and summary of all recordable occupational illnesses and injuries be provided by the employer to any employee, former employee or their representative. Petitioner Caterpillar feared that members of the union would use certain information from the OSHA No. 200 logs to harass or injure strikebreakers and thus furnished redacted versions of the log. The Court of Appeals did acknowledge that private employers do not have the discretion to redact employee names from the aforesaid logs; it did not specifically find, as respondents suggest, that the redaction was a de minimis violation. Rather, the Federal Court of Appeals accepted the Secretary of Labor’s view that the Occupational Safety and Health Review Commission “cannot label a violation de minimis and disregard it.” (Id., at 668.) Of further interest is the following statement made by the Caterpillar court:
“We are no more impressed than was the ALJ by Caterpillar’s argument that an employer’s obligations are qualified by a requirement that a union’s request be ‘reasonable’ * * * [Caterpillar] wants a substantive limitation on access, not a reasonable-time-place-and-manner limitation. Obtaining names for an improper purpose may violate some other law, but proof of a union’s ‘good’ purpose is not a precondition to the employer’s obligation under the rule.” (Id.)
Nor does the Court find merit in the argument advanced by respondents that the redacted information is exempt under the Freedom of Information Law (FOIL). In the first instance, as petitioners properly contend, their request for the records was not a FOIL request pursuant to the Public Officers Law but a request pursuant to the PESH Act.
Secondly, while it is undisputed Public Officers Law § 89 (2) (a) plainly permits an agency to delete “identifying details” from records made available by it to the public in order to prevent an unwarranted invasion of personal privacy, the information requested herein falls outside the ambit of FOIL.
Section 89 (2) of the Public Officers Law provides as follows:
“(a) The committee on public access to records may promulgate guidelines regarding deletion of identifying details or withholding of records otherwise available under this article to prevent unwarranted invasions of personal privacy. In the absence of *536 such guidelines, an agency may delete identifying details when it makes records available.”
Section 89 (2) (b) of the Public Officers Law provides that
“[a]n unwarranted invasion of personal privacy includes, but shall not be limited to:
“i. disclosure of employment, medical or credit histories or personal references of applicants for employment.”
Respondent DOL contends that the Forms do contain a description and nature of an employee’s injury or illness which is a medical condition and thus properly raises questions of privacy concerns. “ ‘What constitutes an unwarranted invasion of personal privacy is measured by what would be offensive and objectionable to a reasonable [person] of ordinary sensibilities’ ” (Matter of Ruberti, Girvin & Ferlazzo v New York State Div. of State Police, 218 AD2d 494, 498 [3d Dept 1996], quoting Matter of Dobranski v Houper, 154 AD2d 736, 737 [3d Dept 1989]).
Bearing in mind that statutory exemptions are to be narrowly construed (Matter of Buffalo News v Buffalo Enter. Dev. Corp., 84 NY2d 488, 492 [1994]), the Court must agree with petitioners that there is nothing contained therein which reaches the level of medical records. Nor, under the circumstances, is the Court of the opinion that petitioners fall within the meaning of “the public” envisioned by the Legislature in drafting FOIL provisions. Thus, the material for which petitioners seek disclosure is not subject to the FOIL privacy exemptions; hence, Public Officers Law is inapplicable to the instant matter. In essence, the DOL, in redacting the subject information from the Logs, is frustrating the underlying purpose for which the Logs are maintained, to wit, to protect the health and safety interests of public employees, and renders access to such Logs practically meaningless.
In light of the foregoing, the Court grants the petition to the extent that it declares that DOL’s interpretation of the PESH Act, in which it denied full access to Occupational Injury Logs, was arbitrary, capricious and contrary to law and violative of the PESH Act. The Court further finds that the IBA’s determination to affirm the DOL’s discretion in determining that an unwarranted invasion of personal privacy would exist if the identity of the employees contained in the Forms were disclosed is not warranted by the record, has no reasonable basis, was contrary to the PESH Act, constitutes an erroneous interpretation of the law, and is hereby annulled.

. A DOSH 900 Form is issued by DOL and is commonly referred to as a “Log and Summary of Occupational Injuries and Illnesses” or “Occupational Injury Log.” Said Form sets forth the dates of employee injury, the employees’ names, occupations, the injured employees’ units or sections, and a description of the injuries or illnesses.

. In their reply brief, petitioners correct their initial assertion that the Code of Federal Regulations requires that public sector employers must provide access to the entire log, the supplementary record and the annual summary, for purposes of inspection and copying to any employee, former employee and to their representatives. Rather, petitioners now state that they seek access to the entire Occupational Injury Log.